NOTICE
Decision filed 03/14/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220453-U

NO. 5-22-0453

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| JIMMY D. HILL and BARBARA HILL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 20-L-446 |
| | ) | |
| COTTRELL, INC., and CAMBARLOC ENGINEERING & MANUFACTURING, INC., | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Christopher T. Kolker, |
| (Cottrell, Inc., Defendant-Appellant). | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not err in denying Cottrell's motion to dismiss for lack of specific personal jurisdiction where the plaintiffs made an adequate showing that Cottrell purposefully directed its activities in Illinois and that the plaintiff's cause of action related to Cottrell's activities in Illinois such that it would not be unreasonable to require Cottrell to defend the plaintiffs' action in Illinois.

¶ 2   Defendant Cottrell, Inc. (Cottrell) appeals an order denying its motion to dismiss the plaintiffs' claims against it for lack of specific personal jurisdiction. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4   On June 8, 2018, the plaintiff, Jimmy D. Hill, was injured while working as a car-hauler for Jack Cooper Transport Company (JCT). On the day of the accident, Hill drove to the John

1

Deere terminal in Horicon, Wisconsin, to pick up 13 utility vehicles for delivery to John Deere dealerships in Illinois and other states. Hill loaded the vehicles onto a car-hauling rig and then drove to the John Deere dealership in Somonauk, Illinois, to deliver three vehicles. During the unloading process, a tie-down ratchet in the rig's ratchet tie-down system failed to release. When Hill attempted to free the ratchet with a ratchet bar, the ratchet suddenly released and the ratchet bar sprung backward with great force, striking Hill's left hand and arm, resulting in serious injuries.

¶ 5     At the time of the accident, Hill was using a loaner rig. Prior to the trip to Wisconsin, Hill dropped his regular rig off for service and picked up the loaner rig from the codefendant, Cambarloc Engineering & Manufacturing, Inc. (Cambarloc). Cambarloc is a Missouri corporation and an authorized Cottrell repair center. At the time of Hill's accident, Cambarloc performed maintenance and service on the rigs in JCT's fleet. The loaner rig was an extra in JCT's fleet. The rig was manufactured by Cottrell. Cottrell is a Georgia corporation in the business of designing, manufacturing, and selling car-haulers. Cottrell sells its products and replacement parts in the United States and internationally.

¶ 6     In June 2020, Hill and his wife, Barbara Hill, filed a lawsuit against defendants Cottrell and Cambarloc in the circuit court of St. Clair County, Illinois.[1] The plaintiffs alleged that Hill was injured due to the defective and unreasonably unsafe condition of the rachet tie-down system on the Cottrell rig. In the first amended complaint, Hill brought claims against Cottrell under theories of strict product liability—design defect/failure to warn (count I), negligence (count II), breach of implied warranty (count III), and strict liability—abnormally dangerous activity

_____

[1]The defendants removed the case to the United States District Court for the Southern District of Illinois based upon diversity of citizenship. Shortly thereafter, it was discovered that diversity was lacking as both Cottrell and the plaintiffs were Georgia residents. On plaintiffs' motion, the cause was remanded to the circuit court in St. Clair County, Illinois.

(punitive damages) (count IV). Hill also brought a negligence claim against Cambarloc (count V). Hill alleged that Cambarloc negligently maintained or modified the flipper plates on the Cottrell rig, using parts supplied by Cottrell, and that Cambarloc's negligence was a proximate cause of Hill's injuries. Additionally, Barbara Hill filed a loss of consortium claim against Cottrell and Cambarloc (count VI).

¶ 7    Cottrell filed a motion to dismiss the plaintiffs' amended complaint for lack of personal jurisdiction. Cottrell argued that it was not subject to general jurisdiction in Illinois because it was a Georgia corporation, with its headquarters and principal place of business in Georgia. Cottrell admitted that it did business in Illinois but noted that it had no offices or employees in Illinois. Cottrell further argued that it was not subject to specific jurisdiction in Illinois because the plaintiffs, who were also citizens of Georgia, had not shown that their claims arose out of or related to Cottrell's activities in Illinois.

¶ 8    In response, the plaintiffs claimed that Cottrell was subject to specific personal jurisdiction in Illinois under the Illinois long-arm statute (735 ILCS 5/2-209(c) (West 2020)). They argued that Hill had been injured in Illinois while using a defective product manufactured by Cottrell. They further argued that Cottrell held itself out as the largest over-the-road automobile transport equipment manufacturer in the world; that Cottrell's sales of trailers and rigs in Illinois were substantial; and that Cottrell's website listed an authorized distributor and two authorized repair centers in Illinois. The plaintiffs asserted that Cottrell personnel regularly traveled to Illinois to sell its rigs to Illinois customers, and that Cottrell advertised and sold replacement parts for its car-haulers online "presumably to its Illinois-based customers." Finally, the plaintiffs argued that Cottrell's motion should be denied because Cottrell failed to answer discovery or produce for deposition certain witnesses with knowledge of jurisdictional facts.

3

¶ 9    The plaintiffs filed a separate motion for sanctions against Cottrell, alleging violations of the rules of discovery. After hearing arguments on that motion, the circuit court noted the apparent discord between plaintiffs' attorneys and Cottrell's attorneys, and the inability of counsel to navigate discovery without judicial intervention. In an effort to preserve judicial resources and for good cause shown, the court ordered Cottrell to produce its witnesses for discovery depositions on all issues in the case.

¶ 10    Following additional discovery, the plaintiffs filed a supplemental response in support of their opposition to Cottrell's motion to dismiss. The plaintiffs noted that Cottrell's responses to jurisdictional interrogatories revealed that 12% of Cottrell's U.S. sales of trailers, head racks, and/or complete rigs occurred in Illinois; that Cottrell sold 2123 rigs and secured more than $230 million in sales in Illinois; that Cottrell sold its products to six companies in Illinois, including Cassens Transport Company, a business headquartered in Edwardsville, Illinois; and that Cottrell earned almost $165,000 in additional revenue from Cassens Transport for trailer refurbishment. The plaintiffs also noted that Cottrell's distributor, Worldwide Equipment Sales, was based in Illinois; that Cottrell sold replacement parts to companies with Illinois addresses; and that Cottrell issued multiple service bulletins to its customers, including those in Illinois. In further support, the plaintiffs pointed out that in deposition testimony, Cottrell's former chief design engineer acknowledged that he traveled to Edwardsville, Illinois, to meet with Cassens Transport personnel. The plaintiffs also asserted that Cottrell continued to rebuff their discovery requests regarding Cottrell's contacts within Illinois.

¶ 11    In reply, Cottrell argued that the plaintiffs had not established a *prima facie* basis for exercising personal jurisdiction over it. Cottrell claimed that the plaintiffs failed to meet their burden to show that Cottrell had sufficient minimum contacts with Illinois, that plaintiffs' claims

4

arose out of or related to Cottrell's contacts with Illinois, and that it was reasonable to require Cottrell to litigate this action in Illinois. Cottrell argued that the alleged accident was the only thing that occurred in Illinois. Cottrell noted that at the time of the accident, Hill and his wife were Georgia residents and Hill worked out of a Georgia terminal. Cottrell further noted that the subject rig had been manufactured at its facilities in Georgia and that it was originally sold to another company in Georgia. Cottrell claimed that the subject rig had been modified at Cambarloc's repair facility in Missouri sometime prior to the accident, and that according to Jimmy Hill's testimony, the modification contributed to the ratchet-system failure and Hill's injuries.

¶ 12    After considering the pleadings and arguments of the parties, the circuit court denied Cottrell's motion to dismiss. The court concluded that Cottrell was subject to specific personal jurisdiction in Illinois. The court found that Cottrell had purposefully directed its activities in Illinois, and that Hill was allegedly injured while using a Cottrell product in Illinois. Cottrell filed a petition for leave to appeal the order pursuant to Illinois Supreme Court Rule 306(a)(3) (eff. Oct. 1, 2020), and that petition was granted.

¶ 13                            II. ANALYSIS

¶ 14    On appeal, Cottrell claims the circuit court erred in denying its motion to dismiss for lack of personal jurisdiction. Cottrell argues that the plaintiffs failed to meet their burden to establish that their cause of action arose out of or related to Cottrell's contacts with Illinois. Cottrell also argues that the circuit court's ruling was erroneous under basic principles of personal jurisdiction in that the cause of action was filed by Georgia residents against a Georgia corporation and the only alleged tie to Illinois was that the alleged accident occurred in Illinois.

¶ 15    The plaintiff bears the burden to establish a *prima facie* basis for exercising personal jurisdiction over a nonresident defendant. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 16; *Russell v.*

5

*SNFA*, 2013 IL 113909, ¶ 28. Where, as here, the circuit court decides the issue of personal jurisdiction based solely upon the pleadings and documentary evidence, without an evidentiary hearing, the court's decision is reviewed *de novo*. *Russell*, 2013 IL 113909, ¶ 28.

¶ 16    The exercise of personal jurisdiction over a nonresident defendant by an Illinois court is authorized under the Illinois long-arm statute. See 735 ILCS 5/2-209 (West 2020). Subsection (c) of the long-arm statute, commonly referred to as the "catch-all provision," provides that a court may exercise jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2020). Under the "catch-all provision," the issue is whether a nonresident defendant's contacts with Illinois are sufficient to satisfy federal and Illinois due process standards. *Russell*, 2013 IL 113909, ¶ 30. Since the parties have not argued that the Illinois Constitution limits the exercise of personal jurisdiction to a greater degree than the United States Constitution, we will not consider Illinois due process principles separately from federal due process principles. *Russell*, 2013 IL 113909, ¶ 33.

¶ 17    Under federal due process principles, a state court may exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citation.]" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" required for personal jurisdiction differ depending upon whether general jurisdiction or specific jurisdiction is asserted. *Russell*, 2013 IL 113909, ¶ 36.

¶ 18    General jurisdiction exists when the nonresident defendant's contacts with the forum state are so " 'continuous and systematic' as to render [him] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe*, 326 U.S. at 316). When general jurisdiction exists, a plaintiff may pursue a

claim against a defendant even if the defendant's challenged conduct occurred outside of the forum state. *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 14. Thus, general jurisdiction is considered "all-purpose." *Aspen American*, 2017 IL 121281, ¶ 14.

¶ 19 In contrast, specific jurisdiction is "case-linked." *Rios*, 2020 IL 125020, ¶ 19. A court may exercise specific jurisdiction over a nonresident defendant if the defendant has "purposefully directed" its activities at the forum state and the suit "arose out of or related to" the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). There must be " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The "purposeful availment" requirement protects a nonresident defendant from being brought into a jurisdiction based on random or attenuated contacts or the unilateral activity of another person. *Burger King*, 471 U.S. at 475. If the court finds that the nonresident defendant has the requisite "minimum contacts" with the forum state, the court then considers whether the assertion of personal jurisdiction would comport with " 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476 (quoting *International Shoe Co.*, 326 U.S. at 320).

¶ 20 In this appeal, only specific jurisdiction is at issue. Thus, in keeping with the aforementioned principles, an Illinois court may assert specific jurisdiction over a nonresident defendant if the defendant has minimum contacts with Illinois such that it was fairly warned it may be haled into an Illinois court and the action arose out of or was related to the defendant's contacts with Illinois. *Russell*, 2013 IL 113909, ¶ 40. If the court finds that the defendant has the requisite "minimum contacts" with the forum state, the court then considers whether it is reasonable to require the defendant to litigate in Illinois. *Russell*, 2013 IL 113909, ¶ 87. The determination of

7

what constitutes sufficient minimum contacts depends on the facts of each case. *Ballard v. Fred E. Rawlins, M.D., Inc.*, 101 Ill. App. 3d 601, 603 (1981).

¶ 21    Initially, we consider whether the plaintiffs met their burden to show that Cottrell purposefully availed itself of the privileges of conducting activities in Illinois. The plaintiffs' claims against Cottrell are based, in part, on theories of product liability. The plaintiffs alleged that Cottrell designed, manufactured, and placed into the stream of commerce a car-hauling trailer containing a defective ratchet tie-down system; that Cottrell failed to warn the user about the hazards associated with the dangerous condition of its product; and that Jimmy Hill was seriously injured while using the defective product in Illinois. The plaintiffs argued that Cottrell had sufficient minimum contacts with Illinois to establish specific jurisdiction in Illinois. In support of their argument, the plaintiffs pointed to Cottrell's responses to jurisdictional interrogatories. Therein, Cottrell acknowledged that 12% of its U.S. trailer sales were made in Illinois, totaling more than $230 million in sales to customers in Illinois. Cottrell also acknowledged that it received additional revenue from the sale of parts and refurbishment services to Illinois customers. Additionally, the plaintiffs provided evidence indicating that Cottrell had a product distributor and two authorized Cottrell repair centers in Illinois. There was also evidence that Cottrell personnel met with one of its customers, Cassens Transport, in Illinois, and that Cottrell issued multiple service bulletins to its customers, including those in Illinois. On this record, we find that the plaintiffs adequately demonstrated that Cottrell purposefully directed its marketing and sales activities in Illinois and that it derived benefits from those activities in Illinois. Thus, Cottrell purposefully availed itself of the privileges of conducting business in Illinois.

¶ 22    Next, we next consider whether the plaintiffs made an adequate showing that their claims against Cottrell arose out of or were related to Cottrell's activities in Illinois. The United States

8

Supreme Court recently addressed this aspect of specific jurisdiction in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. ___, 141 S. Ct. 1017 (2021). There, the Supreme Court held that the requirement that a cause "arise out of or relate to" the defendant's contacts with the forum was not exclusively a "causation-only" approach. *Ford Motor Co.*, 592 U.S. at ___, 141 S. Ct. at 1026. The Court explained:

> "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co.*, 592 U.S. at ___, 141 S. Ct. at 1026.

The Supreme Court also referred to prior decisions in which it held that specific jurisdiction may attach in cases where a company serves the market for a product in the forum state and the product malfunctions there, even if the product was designed, made, and sold in another forum. See *Ford Motor Co.*, 592 U.S. at ___, 141 S. Ct. at 1027; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

¶ 23    The *Ford Motor Co.* case involved two distinct product liability actions filed against Ford Motor Company. *Ford Motor Co.*, 592 U.S. at ___, 141 S. Ct. at 1022. In one case, a Montana resident was fatally injured when her Ford Explorer left the roadway, rolled over, and landed in a ditch in Montana. In the other case, a Minnesota resident was injured when the airbags in a Ford Crown Victoria failed to deploy during a rear-end crash in Minnesota. In each case, the subject vehicle had not been manufactured or sold in the forum state. Nevertheless, the Supreme Court

9

found specific personal jurisdiction proper where Ford extensively marketed, sold, and serviced the same type of vehicles in the forum state, and where the allegedly defective vehicles malfunctioned while being driven in the forum state, resulting in injuries to the resident plaintiffs. *Ford Motor Co.*, 592 U.S. at ___, 141 S. Ct. at 1028-30. The Supreme Court found that the connection between the plaintiffs' claims and Ford's activities in their respective states was "close enough to support specific jurisdiction." *Ford Motor Co.*, 592 U.S. at ___, 141 S. Ct. at 1032.

¶ 24    In *Ford Motor Co.*, the Supreme Court rejected Ford's contention that the plaintiffs' theory of personal jurisdiction was foreclosed by *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017). See *Ford Motor Co.*, 592 U.S. at ___, 141 S. Ct. at 1030-31. In *Bristol-Myers*, several hundred nonresident plaintiffs joined in actions against a nonresident defendant in a state court in California, claiming that they were injured as a result of taking a prescription drug manufactured by the defendant and sold nationwide. The nonresident plaintiffs did not purchase the prescription drug in California, they did not use the drug in California, and they did not sustain any injuries in California. *Bristol-Myers*, 582 U.S. at 266-67. Under those facts, the Supreme Court determined that the California court erred in finding specific personal jurisdiction because there was no connection between the forum, the defendant's activities there, and the plaintiffs' claims. *Bristol-Myers*, 582 U.S. at 264-65.

¶ 25    After reviewing the record, we find that the plaintiffs demonstrated a sufficient connection between Cottrell's activities in Illinois and the litigation to satisfy due process concerns. By all accounts, the accident occurred in Illinois. Jimmy Hill, an over-the-road car-hauler, suffered a job-related injury in Illinois. Hill was injured when an allegedly defective ratchet tie-down system on a Cottrell car-hauling rig failed in Illinois. As noted earlier, Cottrell regularly marketed and sold car-hauling rigs and replacement parts to business entities in Illinois. The subject rig was

manufactured at Cottrell's facility in Georgia. And while that rig was originally sold to a company in Georgia, it was thereafter acquired by Hill's employer and used to haul vehicles and equipment in Illinois and neighboring states. Thus, this case is distinguishable from *Bristol-Myers*, and closer to *Ford Motor Co.*, in that the nonresident plaintiff, Jimmy Hill, used defendant's allegedly defective product while working in Illinois, and he sustained personal injuries when that product allegedly malfunctioned during use in Illinois.

¶ 26    In determining whether it would be reasonable to require Cottrell to litigate this particular cause of action in Illinois, a court may consider: (1) the burden on the defendant of defending the action in the forum state, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining effective relief, and (4) the judicial system's interest in obtaining the most efficient resolution of the dispute. *Rios*, 2020 IL 125020, ¶ 30. Having considered these factors, we conclude that it would not be unreasonable to require Cottrell to litigate in Illinois. Illinois has a solid interest in adjudicating this controversy. As noted, the accident and work-related injury occurred within the borders of Illinois, and the allegedly defective product failed in Illinois. Cottrell promotes, sells, and services similar products that are used by workers in Illinois. Cottrell has a regular customer-base in Illinois, and it derives substantial earnings from the sales of its car-hauling rigs and replacement parts in Illinois. Although the plaintiffs are Georgia residents, they have an interest in litigating in the forum where the accident occurred and where Jimmy Hill was injured. Additionally, the exercise of personal jurisdiction by an Illinois court would serve the judicial system's interest in obtaining an effective resolution of the controversy, without treading on the province and policies of other states with potential interests in the controversy. Further, Cottrell has not demonstrated that it would be burdened by defending this lawsuit in Illinois. To

allow Cottrell to insulate itself from accountability in Illinois would undermine principles of fundamental fairness.

¶ 27                                    III. CONCLUSION

¶ 28    In sum, the plaintiffs met their burden to show that Cottrell purposefully availed itself of the privileges of conducting business in Illinois, and that there was a relationship between Cottrell's activities in Illinois and their underlying claims such that it would be reasonable to require Cottrell to litigate in Illinois. Therefore, the circuit court did not err in denying Cottrell's motion to dismiss for lack of personal jurisdiction. Accordingly, the judgment of the circuit court is affirmed.

¶ 29    Affirmed.